**AETNA CASUALTY AND SURETY COMPANY, Appellant,**

v.

Juan M. PEREZ, Appellee.

No. 13918.

Court of Civil Appeals of Texas.

San Antonio.

Sept. 5, 1962.

Rehearing Denied Sept. 26, 1962.

Guittard & Henderson, Victoria, for appellant.

Kelly, Hunt, Cullen & Mallette, Victoria, Utter & Chase, Corpus Christi, for appellee.

POPE, Justice.

Juan M. Perez recovered judgment against Aetna Casualty and Surety Company for partial temporary incapacity for a period of 125 weeks. Aetna has appealed and claims that there was improper jury argument, jury misconduct, and insufficient evidence to support the period of disability found by the jury.

Aetna claims that plaintiff's counsel made three improper arguments or comments in the presence of the jury, which were harmful. Only small portions of the arguments are before us by formal bills of exception. The first comments were made by plaintiff's counsel while objecting to defendant's argument. Defendant was arguing that Perez had gone to three different doctors but had not called them to testify about his claimed injury. Whether he suffered an injury was a disputed fact. Plaintiff objected to defendant's argument and, in the hearing of the jury, stated that the doctors were just as available to the defendant as they were to him; that doctors charge a fee of three hundred dollars, that defendant can subpoena them, and "it is unfair and against the rules of evidence and unethical to argue that, when those men are available to them as they are to us." The quoted part is the only portion about which defendant complains. The record does not show an objection or adverse ruling by the court. The comments by plaintiff were an improper criticism of opposing counsel, but in our opinion they were curable by an instruction which was not requested. Wade v. Texas Employers' Ins. Ass'n, 150 Tex. 557, 244 S.W.2d 197.

The next improper argument occurred during plaintiff's closing argument. The situation which led up to the argument was that one of defendant's witnesses had testified he did not remember the occasion of plaintiff's injury. On cross-examination he denied that he had ever told plaintiff's counsel that he remembered the incident. Counsel did not take the stand to dispute the witness, but in his closing argument he said: "And as far as me taking the witness stand and denying what Mr. Witt said, my personal ethics prevent me from doing that. Why should I take the stand and call a nice young fellow like Mr. Witt a liar. I am not going to do it." Defendant made no objection to this argument. The prefacing phrase indicates that the argument was in response to something that defendant had said. Assuming it was uninvited, it was curable and would have been cured by an appropriate instruction. Defendant's failure to object amounted to a waiver. Wade v. Texas Employers' Ins. Ass'n, supra; Texas & N. O. R. Co. v. Sturgeon, 142 Tex. 222, 177 S.W.2d 264, 266; Texas General Indemnity Co. v. Bridwell, Tex.Civ.App., 304 S.W.2d 131, 133.

The third claimed improper argument also occurred during plaintiff's closing argument. Defendant had contended during the trial that plaintiff had not suffered any injury, and urged that plaintiff was drawing his regular pay at the time plaintiff filed his claim, only twenty-two days after the date of the claimed injury. We do not have the full arguments but in his closing argument, plaintiff's counsel stated that defendant "has made a big to do about these pleadings. I read them to you at the beginning of the trial, if you will recall. * * * Right in these pleadings we stated he filed his claim within thirty days of the date of his accidental injury which under the law he had to do." Defendant objected and in the presence of the jury correctly stated that the argument was a misrepresentation of the law. Plaintiff's counsel then promptly stated that it was the notice that had to be given within thirty days. Defendant's counsel then said that notice was not the same thing as a claim. The court refused defendant's motion for mistrial and overruled the objection. From the colloquy

it appears that defendant caught the plaintiff's error, objected, and that plaintiff, in the presence of the jury, was forced to admit and did admit the correctness of defendant's objection. We fail to see how this harmed the defendant. The error was not again repeated. To these three brief errors, only one objection was leveled. Upon objection, the errors were not again repeated. In context with the whole case, we conclude that they were harmless. Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W. 2d 596.

■ Jury misconduct is also claimed. One point is that a juror, J. F. Parlegreco, mentioned the fact that Perez's employer "fired" him after he made the claim, whereas, another company would not have fired him. It was in evidence that Perez was discharged and that was a proper subject for discussion. Parlegreco stated that he told other jurors that in seven years no one had ever been fired for disability by his employer, Union Carbide. Two other jurors stated that they recalled the remark. The evidence also showed that Perez's employer had employed him without giving him a pre-employment physical examination. Parlegreco testified that he told the other jurors that his employer, Union Carbide, always gave a pre-employment physical. The other jurors could not recall whether this statement was made.

■ There was no express finding about the fact of misconduct; therefore the implied findings of no misconduct support the trial court's decision. Rosamond v. Keyes, Tex.Civ.App., 255 S.W.2d 399. The first of the claimed misconduct statements may be subject, however, to the rule that implied findings can not overcome the undisputed evidence to the contrary. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; Texas Employers' Ins. Ass'n v. Phillips, Tex.Civ.App., 255 S.W.2d 364, 366. In any event, there was no harm, for several reasons. The remark, according to the foreman, was rebuked. See, 12 Baylor Law Rev. 366-369. He said he instructed them that "we weren't concerned about Union Carbide." One juror stated that the foreman told Parlegreco, "That has nothing to do with it," and that was the end of the matter. The comment was not discussed. The trial court was, no doubt, impressed with the peculiar attitude of Juror Parlegreco. It is suggested that the two remarks he made about his own employer were aimed at creating prejudice against Perez's unfair and thoughtless employer, and that the verdict was the result of that sentiment. The record shows, however, that Parlegreco was the best friend Perez's employer and the defendant had. He stood alone against the other eleven jurors on the issues until he brought them from a verdict of 300 weeks disability to 125 weeks. He said at the misconduct hearing that Perez "wasn't necessarily due any compensation." He said also, "anything I am going to say is going to be substantiating that thinking to a degree." In other words, Parlegreco, during the jury deliberations resisted the employee, and yet at the misconduct hearing testified that he made misconduct statements which created sympathy for the employee. The trial court may have considered the juror as overly eager to wreck the whole verdict. Parlegreco's statements in context with the whole record were harmless.

How the employer's failure to give a pre-employment examination to Perez would create prejudice against the employer we fail to see. It would seem that Perez's former employment upon less showing of physical condition than other employers require would work the other way. This is an entirely different situation from that in which the misconduct consists of statements that the employee, in the future must meet a pre-employment physical examination. Texas Employers' Ins. Ass'n v. Phillips, supra.

Defendant also complains of an unlawful conversation between the bailiff and two jurors. Parlegreco testified, on misconduct hearing, that at one time while the jurors were still deliberating, and when the jury was leaving for the evening, the bailiff said

to him: "If you guys are just a couple thousand dollars apart why don't you settle it?" Juror Hoxworth stated that the bailiff, late in the deliberations, said to him when the jury was separated but before a verdict was returned: "What in the world is the matter with you in there; are you fighting over two or three thousand dollars?" Neither of these jurors mentioned the comments to any other juror, nor did they mention them to each other. These two incidents of the over-talking bailiff occurred after the jury had been deliberating for a long time, though the times of the occurrences are not fixed. The jury in fact deliberated from July 20 to July 22.

■■ The bailiff's communications were improper. Perhaps in no other area of the law has the effect of the harmless error, Rules 434 and 503, Texas Rules of Civil Procedure, Vernon's Ann.Civ.St., been more noticeable than in that of communications between jurors and other persons. From a rule of presumed harm which was often construed to mean conclusive harm, there was a marked change to a rule that the complainant must, as in other cases, prove harm. Ross v. Texas Employers' Ins. Ass'n, 153 Tex. 276, 267 S.W.2d 541; Foreman v. Texas Employers' Ins. Ass'n, 150 Tex. 468, 241 S.W.2d 977; Denbow v. Standard Accident Ins. Co., 143 Tex. 455, 186 S.W.2d 236; Brown v. Panhandle & Santa Fe Ry. Co., Tex.Civ.App., 294 S.W.2d 223; Whelan v. State, Tex.Civ.App., 271 S.W.2d 108, reversed on other grounds, 155 Tex. 14, 282 S.W.2d 378; Connor v. Heard & Heard, Tex.Civ.App., 242 S.W.2d 205; 41 A.L.R. 2d 307. In Texas Employers' Ins. Ass'n v. McCaslin, 159 Tex. 273, 317 S.W.2d 916, it was held that tampering with a jury by a party was misconduct of such frightful mien that proof of the act carried with it, at least prima facie, proof also of probable harm. This is the rule, and a good one, but its extension into new areas flirts with the re-adoption of the discarded rule of presumed harm in misconduct cases. In our opinion, the casual comment by the bailiff is not in the same class as that of a party who seeks out and asks a juror to help him win his case. Proof of probable harm by something more than proof of the misconduct itself, was therefore necessary in this case.

Measured by the degree of misconduct, there was no harm. "We judge by the degree of the vice, not merely the subject matter * * *." So spoke the Supreme Court in an argument case. Wade v. Texas Employers' Ins. Ass'n, supra. We have here two brief comments which were not discussed or mentioned by either juror. The other ten jurors did not know about the remarks. The two jurors to whom the bailiff made the statements, apparently ignored them.

Measured by the time of the misconduct, there was no proof of harm. As stated in Mrs. Baird's Bread Company v. Hearn, 157 Tex. 159, 300 S.W.2d 646, and as is the case here, there was (1) no proof of the state of the deliberations when the offending misconduct statement was made, (2) there was no showing at what chronological point in the deliberation period it occurred, and (3) the statements were not related in point of time to the answer of any particular issue or issues. Other than the nature of the statements themselves, we have nothing as a basis for a conclusion of harm.

The trial court evaluated the two jurors to whom the statements were made. Both testified fully about the jury deliberations, but very briefly about the remark by the bailiff. The court, from their testimony and demeanor on the witness stand, as well as the whole record, reached the conclusion that they were probably not influenced and the verdict was not probably affected by the bailiff's misconduct. See Robinson v. Ashner, Tex.Civ.App., 357 S.W.2d 611, 614.

There was conflicting evidence about a claimed design by the jurors to achieve a result. The trial court, on the basis of the statements and denials, decided that there was neither an express nor implied

agreement to achieve a result. That is the province of the trial court.

We have examined the other points and are of the opinion that the judgment should be affirmed.