**E. P. DOROUGH, Ind. and as Ind. Executor of Estate of Elmer A. Dorough, Dec., et al., Appellants,**

v.

**Helen Griffin THORNTON et vir, Appellees.**

**No. 17085.**

Court of Civil Appeals of Texas, Fort Worth.

Feb. 6, 1970.

Rehearing Denied Feb. 20, 1970.

Cantey, Hanger, Gooch, Cravens & Munn, and Sloan B. Blair, Fort Worth, for appellants.

Simon & Simon, and Richard U. Simon and W. Weir Wilson, Fort Worth, for appellees.

## OPINION

MASSEY, Chief Justice.

Plaintiff, Helen Griffin Thornton, joined by her husband, sued the defendants, E. P. Dorough, et al.

Trial was before the court without a jury, and judgment was rendered for plaintiff. From such judgment the defendants appealed.

Affirmed.

Basically, the question involved on the appeal is the construction of the will of Walter B. Griffin, deceased.

Dispute, involving the construction, is between the widow of the deceased, now Mrs. Helen Griffin Thornton, Individually and as Independent Executrix of the Estate of the deceased, plaintiff herein, and three individuals who had been the former employees of the deceased in his operation of a business called Majestic Reproduction Company, which he had operated as a sole proprietorship. These persons were the defendants, Elmer A. and E. P. Dorough and James F. Merrill.

Under plaintiff's contentions the will provided that a certain sum of money mentioned in the will as "Cash, including any savings accounts, whether in savings and loan associations or otherwise", a part of the assets of Majestic Reproduction Company, passed to her under the will in question.

Defendants counter with their contention that since they purchased the Majestic Reproduction Company, according to the provisions in the will, they become entitled to said sum.

Generally, the determination is whether the cash devised would be determined by deducting the company's debts from the operating capital on hand, or whether the matter of indebtedness should be disregarded.

The material portions of the will of Walter B. Griffin read:

"Article I.

"I direct that all my just debts * * * be paid by my Executor * * * as provided by Article V of this my said Last Will and Testament.

"Article II.

"D. * * * I hereby give and grant to my Executor full power and authority * * * 6. To continue * * * any business enterprise in which I am interested at may death, including partnerships and joint ventures in which I may then be interested * * *.

"Article IV.

"A. I own the MAJESTIC REPRODUCTION COMPANY, a sole proprietorship. Subject to the provisions of paragraph D of this Article IV, and the provision of paragraph B of Article V hereof, I direct my Executor to sell to the following named individuals the interests in said MAJESTIC REPRODUCTION COMPANY set opposite their names, if they are willing to purchase same:

"1. ELMER A. DOROUGH—One-third

"2. E. P. DOROUGH—One-third

"3. JAMES F. MERRILL—One-third.

"* * * The price for each one-third interest shall be the agreement of the purchaser to pay, and the payment of, the sum of One Hundred Fifty Dollars ($150) per month for five years. * * *

"D. There shall be excepted from the assets of MAJESTIC REPRODUCTION COMPANY to be sold to those mentioned in paragraph A of this Article IV and from the sale of the business under the circumstances described in paragraph B of this Article IV, the following:

"1. Cash, including any savings accounts, whether in savings and loan associations or otherwise.

"2. Stocks and bonds in other corporations.

"3. Oil and gas properties.

"4. The land and building located at 907 Houston Street, Fort Worth, Texas. This property is presently used in the business by Majestic Reproduction Company, and I have devised same to my wife by Article III–A–2 hereof.

"Items 1, 2 and 3 above shall become a part of my residuary estate and go as provided in Article V–A hereof, to my beloved wife, HELEN GRIFFIN. It is possible that my wife has a community interest in MAJESTIC REPRODUCTION COMPANY, and I hereby request that she join in the execution of whatever documents are necessary in order to effectuate the sale of the entire business of Majestic Reproduction Company, less the assets listed above in this paragraph D, * * *. Should she fail to so join in the execution of the instruments of sale and transfer, then the sale of my interest in Majestic Reproduction Company shall nevertheless be made as set forth in said paragraphs A * * * hereof, but the items listed herein in his paragraph D of Article IV shall not be excepted from said sale. * * *

"Article V.

"A. All the rest and residue of my estate not otherwise disposed of shall go outright and in fee simple to my beloved wife, HELEN GRIFFIN.

"B. Each devisee and legatee hereunder shall be chargeable with and shall pay to my Executor the State inheritance taxes which are payable on account of the devise and legacy to him.

"C. All of my debts * * * shall be paid out of the assets comprising my residuary estate. * * * My Executor is hereby authorized and directed, if requested by the purchasers named in paragraph A of Article IV so to do, in the event of their purchase of the business, to loan them, without interest, up to Twenty-Five

Thousand Dollars ($25,000) of the amount of cash withheld from the sale of the business to them, or the amount of the cash so withheld if less than $25,000, said loan to be repaid not later than twelve months from the date of my death and to be secured by a lien on the assets of the business sold to them.

"IN WITNESS WHEREOF, I have signed my name at the margin of each of the preceding nine pages, and upon this page, as testator of this my Last Will and Testament, this 17 day of April, 1958.

"/s/ Walter B. Griffin"

Following death of the aforesaid testator a sale of the Majestic Reproduction Company was effected to defendants as contemplated by the provisions of the will. In such sale the plaintiff joined and cooperated. No money was loaned to defendants. The cash on hand and in use as operating capital was withheld by them to the extent of an amount of indebtedness owing by Majestic Reproduction Company to its regular creditors, but the excess in the amount of $7,563.45 was paid over so that the plaintiff received the benefit thereof. At the material time the "cash on hand" was $33,263.16, and the company's debts totaled $25,699.71.

Evidence produced on trial showed that the regular amount of current indebtedness owing, pursuant to the operation of the Majestic Reproduction Company, would approximate $25,000.00, and that the retained operating capital ("cash on hand") would be an amount sufficient to liquidate such current indebtedness.

It would appear that the trial court was entitled to conclude, as it obviously did, that it would be necessarily inferred that the defendants, if they elected to and did purchase the Majestic Reproduction Company, would need approximately $25,000.00 for use as operating capital ("cash on hand"); and that it would be necessarily inferred that such need was within the contemplation of the testator in connection with the expressions made in the will concerning the loan, without interest, of up to $25,000.00.

■ In the interpretation of a will—in the determination that it is unambiguous—the court is entitled to and warranted in making the construction of the language and provisions thereof *as applied to the physical facts,* especially in resolving a question of repugnancy of provisions in different parts of the instruments. In this there would be no distinction to be made from any other type of instrument requiring construction on the part of the court. An example where the same rule would apply would be in the case of an instrument of deed. In Gage v. Owen, 435 S.W.2d 559, 563 (Tex.Civ.App.1968, writ ref. n. r. e.) we had occasion to discuss the rule as applied to a deed, and in particular the case of Strong v. Garrett, 148 Tex. 265, 224 S.W.2d 471 (1949).

In *Strong* it was held that the general rules of construction applicable to conflict of the specific with the general description in a deed would not be applied when the grantor's true intentions to convey the land covered by the general description clearly and unmistakenly appears from the language of the entire instrument.

Viewing the will in its entirety we are not left in doubt as to the expressed intentions of the testator which are reflected therein. The trial court was correct in holding that the will provided that the total of the operating capital ("cash on hand") of the Majestic Reproduction Company, whatever the amount thereof might be, would pass to the plaintiff as his wife; and that such amount as would be required by the defendants incident to their purchase up to $25,000.00, and only in the event of the purchase, would (hopefully) be loaned to them by him (or her) who was charged with the duty of administrating his estate.

"The first concern of the court in construing a will is to ascertain the intention of the testator. Testamentary intent

is the mental attitude of the maker of a will, as expressed in the instrument or as evidenced by its terms when considered as a whole." 61 Tex.Jur.2d 265, § 144, Wills.

"If it is not in contravention of law or public policy, the intention of a testator must be given effect on ascertainment. And it is the duty of the court to carry out the testator's purpose where lawful, and to enforce the scheme that he had in mind for the disposition of his estate." 61 Tex. Jur.2d 273, § 148, Wills.

See also 61 Tex.Jur.2d, Chapter on Wills, §§ 139, "Construction of clauses to harmonize with each other"; 140, "—Reconciliation of inconsistencies"; 199, " 'Money,' 'dollars,' and terms of similar import"; and 106, "(Conditional or Contingent Wills) In general."

█ Our holding is that the trial court was correct in its construction of the will, in relation to the disposition of the $33,-263.16 "cash on hand" as the operating capital of the Majestic Reproduction Company as of the date of the testator's death. Plaintiff was entitled thereto.

█ The "election" on the part of each of the defendants to take under the will of the testator was exercised, that being for each of them in their respective rights to purchase what they received of the Majestic Reproduction Company in interests of one-third each. Each having done so in his respective right it might be considered that each would be responsible to deliver over to the plaintiff only one-third of the amount in controversy. That would not, in our opinion, necessarily be the case, however, for the reason that all three of them —acting in concert—withheld the cash in question. They did not severally withhold one-third thereof. The trial court did not err in rendering the joint and several judgment against them.

There was good and sufficient evidence of probative force and effect placed in the record, in greatest part the will itself, to support the judgment. The judgment was not contrary to the greater weight and preponderance of the evidence.

█ While the evidence of a certain witness, R. W. Jablonowski, Jr., might have been inadmissible there would not have been reversible error requiring a reversal of the judgment even if it had been considered. Judgment would necessarily have been the same in any event. Furthermore, trial was before the court and at the time the witness' evidence was received the court announced that it was not his intention to consider inadmissible evidence, though he wanted to "hear everything". It was not shown in the record that he did consider the evidence given by the witness —expressly, impliedly, or necessarily. We are convinced that the court did not treat Jablonowski's testimony as evidence upon which judgment was rendered, though no reversible error would be present if it had so treated it.

Judgment is affirmed.